UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO: |
| | ) | |
| WASHBURN LAW, PLLC | ) | 23-00222-5-DMW |
| | ) | |
| DEBTOR | ) | CHAPTER 7 |
| | ) | |
| James B. Angell, Chapter 7 Trustee for Washburn Law, PLLC, | ) ) ) | |
| Plaintiff | ) ) ) | Adv. Pro. No. 23-00082-5-DMW |
| vs. | ) ) | |
| Jackson Munsey, Jr. (deceased) and Garland Lee Zuber, | ) ) ) ) | |
| Defendants | ) | |

**STATEMENT OF MATERIAL FACTS SUPPORTING
MOTION FOR SUMMARY JUDGMENT
AGAINST GARLAND LEE ZUBER, JR.**

**NOW COMES** the Plaintiff, James B. Angell, in his capacity as the court-appointed Trustee for the Bankruptcy Estate of Washburn Law, PLLC, by and through undersigned counsel, and hereby submits this Statement of Material Facts in support of Plaintiff's Motion for Summary Judgment against Garland Lee Zuber, Jr. (Mr. Zuber") pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure and Federal Rules of Civil Procedure Rule 56, shows the Court that the pleadings, discovery, and documents of record demonstrate that there is no genuine dispute of any of the following material facts.

1

On January 27, 2023 (the "Petition Date"), Washburn Law, PLLC (the "Debtor" or "Washburn Law") filed a petition for relief under Chapter 7 of the United States Bankruptcy Code in the Eastern District of North Carolina. [Complaint, ¶ 1, admitted in Answer][1] James B. Angell was appointed by the United States Bankruptcy Court to serve as Chapter 7 Trustee in the Washburn Law case, and presently serves as Chapter 7 Trustee pursuant to 11 U.S.C. §704. [Complaint, ¶ 2, admitted in Answer][2]

The Debtor is a professional limited liability company organized to perform legal services and operating under the laws of the State of North Carolina, formerly with its principal office located at 136 Pacolet Street, Tryon, NC 28782. [Complaint, ¶ 7, admitted in Answer] Since at least 2018, substantially all of the business of Washburn Law was to perform legal services in connection with real estate closings

---

[1] Mr. Zuber contends in his deposition that his Answer merely copied Jack Munsey's Answer.[Zuber Depo., p. 17, l. 17-23]. A party is bound by the admissions of his pleadings. Generally, "a party is bound by the admissions of his pleadings." *Lucas v. Burnley*, 879 F.2d 1240, 1242 (4th Cir. 1989) (quotation omitted); *see Brown v. Sikora & Assocs., Inc.*, 311 F. App'x 568, 571 (4th Cir. 2008) (per curiam) (unpublished). Accordingly, "factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them." *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983). Such a representation is conclusive unless the court allows the party who made the representation to withdraw it. *See Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 347 (4th Cir. 2014). *Figueroa v. Butterball, LLC*, 2022 U.S. Dist. LEXIS 133597 *, pp. 6-7 (E.D.N.C. 2022).

[2] Mr. Zuber admits to proper venue, that the court has subject matter jurisdiction and that this is core proceeding in his Answer. [Complaint, ¶¶ 3, 4, 5, admitted in Answer]

for clients in North Carolina and South Carolina. [Complaint, ¶ 8, admitted in Answer]

Jonathan W. Washburn ("Jonathan Washburn") was an attorney licensed and in good standing under the laws of the State of North Carolina. [Complaint, ¶ 9, admitted in Answer] From at least 2018 until the Petition Date, Jonathan Washburn was the managing attorney for closings of North Carolina real estate. [Complaint, ¶ 20, admitted in Answer]

From at least October, 2015 until the present, Washburn Law regularly deposited funds from or for its clients for North Carolina real estate closings and for South Carolina real estate closings in a client trust account at First Citizens Bank, Account No, 7948 (the "Trust Account"). [Complaint, ¶ 25, admitted in Answer] Washburn Law had professional responsibilities to its clients and others to hold and disburse funds entrusted to it in the Trust Account for the purposes for which professional services were provided to its clients. [Complaint, p 26, admitted in Answer] The Trust Account consistently contained funds for multiple real estate closings of North Carolina real estate and South Carolina real estate. [Complaint, p 27, admitted in Answer]

In the course of its performance of professional services to clients, parties to real estate closings would sign closing settlement statements instructing Washburn Law as to the disposition of funds deposited for the closing in Trust Account. [Complaint, ¶ 28, admitted in Answer] In addition, Washburn Law sometimes received funds from lenders for real estate closings that were not to be released

3

except upon compliance with conditions required by such lenders. [Complaint, ¶ 30, admitted in Answer] Washburn Law also sometimes received instructions from title insurance companies providing title insurance to its clients, lenders or others for real estate closings that documents were not to be recorded except upon compliance with conditions required by such title insurance companies. [Complaint, ¶ 31, admitted in Answer] Washburn Law had an interest in the funds deposited in the Trust Account in that Washburn Law was required to exercise its professional judgment to see that instructions given to Washburn Law on the signed closing settlement statements or from lenders, title companies and others whose funds were handled by Washburn Law were properly complied with in the course of its professional services. [Complaint, ¶ 33, admitted in Answer]

From time-to-time Washburn Law failed to properly apply funds in accordance with closing statements and to advise the disposition of such funds. [Answer, ¶ 32] Between the dates of January 27, 2019 and January 27, 2023, Mr. Zuber, acting in concert with Mr. Munsey, caused $5,702,426.28 to be wired to AAA. ]Exhibit 44]

Garland Lee Zuber, Jr. ("Lee Zuber") is a citizen and resident of Spartanburg County, South Carolina. [Complaint, ¶. 16, admitted in Answer] He received a Bachelor of Business Administration degree from McMurry University with a concentration in accounting in 1985. [Zuber Depo., p.5, l. 12-25; p. 6, l. 1-2] He had work experience in public accounting, construction accounting and business operations before being hired to work at Washburn Law. [Zuber Depo., p. 6, l. 13-25] Mr. Zuber was employed by Washburn Law, PLLC in July 2015 [Zuber Depo., p. 10,

4

l. 15-16] He was hired to work at Washburn Law in July, 2015 by Jack Munsey, who he met at poker games at Jack Munsey's house. [Zuber Depo., p. 10, l. 15-24] He was hired to do "basically, accounting" and payroll. [Zuber Depo., p.10, l.25; p. 11, l. 1-9] He tried to do some accounting but the books were a mess and had not been properly done when he got there. [Zuber Depo., p. 10, l. 25; p. 11, l. 1-22] He was initially supervised, until 2017 or 2018, at which time he took over reconciliations [Zuber Depo., p. 19, l. 22-25; p. 20, l. 1-8]

Jonathan Washburn, the managing partner of Washburn Law, PLLC, relied on Mr. Zuber to do the bank reconciliations for the Trust Account from 2017 forward. [341, p. 66, l. 21-25, p. 67, l. 1-23] Mr. Zuber was assigned the title of "CFO" for Washburn Law, PLLC. [341, p. 24, l. 25, p. 25, l. 1-4][3].Mr. Washburn was unaware of the existence of All American A, LLC until he discovered documents relating to it while cleaning out the offices of Washburn law after it shut down. [341, p. 99, l. 6-25; p. 100, l. 1-12]

Stephanie Munsey, the other owner of Washburn Law, became aware of All American A, LLC in 2021. Mr. Munsey explained to her that it was to be a CPO (broker price opinion) company. [S. Munsey Depo. p. 116, l. 25; p. 117, l. 1-2]

---

[3] Mr. Zuber held himself out as "CFO" in emails, but did not sign any loan documents or similar documents in that capacity. He had nothing to do any financial statements or tax returns and contends that he 'was not truly a CFO." . [Zuber Depo., p. 75, l. 24-25; p. 76, l. 1-125 p. .77, l. 1-10] He contends that the real CFO was in India. [Zuber Depo., p. 77, l. 11-13]

At first, Mr. Zuber was able to reconcile the accounts. [Zuber Depo., p. 20, l. 9-25; p. 21, l. 1-4] After Washburn Law changed accounting vendors from Softpro to Qualia, Mr. Zuber was unable to reconcile the law firm's trust account, in fact, he didn't think "it was probably possible to reconcile them." .[4] [Zuber Depo., p. 21, l. 19-25; p. 22, l. 1-21; p. 25, l. 10-16] Because the accounting software would not let him print a reconciliation of the trust account without balancing the accounts, Mr. Zuber would input "plug numbers" as "test" to make the trust account balance, which created a "fictitious balance". [Zuber Depo., p. 24, l. 16-25; p. 25, l. 1-9] Some of the "test" were as much as Two Million Dollars. [Zuber Depo., p. 13, l. 13-19; Exh. Z-13][5] He understood that Mr. Munsey had someone else complete the reconciliation of the Trust Account. [Zuber Depo., p. 41, l. 12-21] He did not think it was possible to reconcile the Trust Account statements. [Zuber Depo., p. 25, l. 10-16] Wires from the Trust Account to All American A, LLC by Mr. Zuber were not always recorded on the books of the Trust Account in Qualia. [Zuber Depo., p.57, l. 3-25; p. 58, l-25; p. 59, l. 1-11; Exh. Z6, Z22]

---

[4] Mr. Zuber attributes his inability to reconcile the trust account to a failure to input checks from Softpro to Qualia, when the accounting systems were changed. [Zuber Depo., p. 65, l. 12-20] He admits that any discrepancies resulting from the change would be booked as a test number in reconciling the Trust Account in the first month after the change. [Zuber Depo., p. 65, l. 21-25; p. 66, l. 1-3]

[5] Mr. Zuber contends that he was told by Jack Munsey that Softpro reconciled the WL Trust Account before the firm switched over To Qualia, he never saw the reconciliations. [Zuber Depo., p. 23, l. 3-12]

Mr. Zuber knew "something was up at some point" with the Trust Account. He had to worry about the balance of the account and not writing checks that would result in a negative balance. [Zuber Depo., p. 16, l. 16-25] At some point in 2022 or a little before that, Mr. Zuber knew something going on because the accounts were not balancing, and they couldn't balance "because of the fact that, the way they had been accounted for, there were two different books going on." [Zuber Depo., p. 19, l. 4-16]

Mr. Zuber understood that the purpose of doing bank reconciliations is to be sure that everything's accurate and accounted for. [Zuber Depo., p. 27, l. 20-22] He knew that reconciliation of a law firm trust account requires reconciling the book balance to the bank balance and reconciling the book balance to the balances of individual clients. [Zuber Depo., p. 26, l. 11-25, p. 28, l. 2-18, l. 23-25, p. 29, l. 1]

Mr. Zuber made wire transfers in connection with closings and was given the settlement statement and closing packet to instruct him where to send funds. [Zuber Depo., p. 33, l. 17-25; p. 34, l. 1-5] When he was asked to send money from the Trust Account to All American A, LLC, it didn't have any kind of Settlement Statement. "It was just a matter of amount and . . . it needed to be done then." [Zuber Depo., p. 34, l. 6-12] The transfers to All American A, LLC were not attributed to any specific client balance. [Zuber Depo., p. 35, l. 15-25] The wires to All American A, LLC were not always booked on the records of the Trust Account. [Zuber Depo, p. 56, l. 2-25 through p. 59, l. 11] Mr. Zuber was unaware of any value given to Washburn Law in

7

exchange for the transferred funds [Zuber Depo., p. 36, 1-17] or any business function of All American A, LLC. [Zuber Depo., p. 34, l. 22-25; p. 35, l. 1-4]

In the course of his employment, Mr. Zuber would be asked to initiate wires for real estate closings. If he was asked to initiate wires for real estate closings, he was provided with a copy of the settlement statement for the closing, indicating the client for whom the trust account held funds. [Zuber Depo., p. 33, l. 17-25, p. 34, l. 1-5] Throughout his employment with Washburn Law, Mr. Zuber was directed by Jackson Munsey, Jr. to wire funds to All American A, LLC. In these instances, Mr. Zuber was not given any written documentation and was not directed to charge the expense to a specific client. [Zuber Depo., p. 35, l. 10-22] Instructions to transfer funds to All American A, LLC were given to him orally by Jack Munsey or his assistance, Usha Thomas [Zuber Depo., p. 34, l. 6-18]

Although Mr. Zuber contends that two other employees of Washburn Law, Candice Marrow and Heather (Cieluch) Turner, may have had authority to wire funds, he concedes that he was unaware of any instance in which either of them wired funds to All American A, LLC. [Transcript, January 9, 2024. p. 127, l. 17-25; p. 128, l. 1-12 (Zuber testimony)] Ms. Turner never wired any funds from the Trust Account to All American A, LLC between January 1, 2018 and December 31, 2022. [Turner Affidavit, ¶ 6]. Ms. Morrow never wired any funds from the Trust Account to All American A, LLC. [Morrow Affidavit, ¶ 6]

Mr. Zuber was unaware of any goods or services provided to Washburn Law by All American A, LLC. [Zuber Depo., p. 34, l. 22-25, p. 36, l. 7-17]

8

Between the dates of January 27, 2019 and January 27, 2023, the Trust Account wired $5,204,869.37 to All American A, LLC. [Exhibit 44] Once funds were in All American A, LLC, they were used to make payments to Jack Munsey, to purchase goods at auction, payments to automobile vendors, payments to Paypal, Apple cash and to Ms. Munsey, and to Mr. Zuber. [Transcript, January 9, 2024, p. 63, l. 6 – 25 through p. 67, l. 23 (Norlander testimony)]

Between the dates of January 27, 2019 and January 27, 2023, Mr. Zuber received $149,583.33 from All American A, LLC. [Exhibit 45] Mr. Zuber did not care where he was paid from, as long as he was paid for his services. [Transcript, January 9, 2024, p. 163, l. 12-22]

Mr. Zuber was in charge of making sure employment tax returns were filed. [341, p. 86, l. 8-13] Federal employment tax returns for Washburn Law, PLLC were not filed for the 3rd and 4th quarters of 2019, the 4th quarter of 2020, or all quarters of 2021 and 2022. [Claim No. 13-1, filed by Internal Revenue Service, 2/24/2023] Mr. Zuber did not file personal tax returns from 2018 to 2023 [Zuber Depo., p. 70, l. 19-25]

Payments made to Mr. Zuber were irregular [Zuber Depo., p. 69, l. 25, p. 70, l. 1-18] and were sometimes made from Washburn Law, sometimes from TSC 1492, LLC and sometimes from All American A, LLC [Zuber Depo., p. 163, l. 9-14] Then timing and amounts of payments were determined by Jack Munsey, who would pay Mr. Zuber "funds at, at other times though different different ways". [Zuber Depo., p. 71, l. 23-25, p. 72, l. 10-19] In fact, Mr. Zuber had no employment contract with

9

Washburn Law, PLLC [Zuber Depo., p. 70, p. 12-13]. Payments to Mr. Zuber from AAA were made by "Venmo or something like that". [Zuber Depo., p. 72, l. 20-22]

Respectfully submitted, this the 29th day of January, 2025.

  s/James B. Angell
James B. Angell
Howard Stallings Law Firm
State Bar No. 12844
P.O. Box 12347
Raleigh, NC 27605
Telephone: (919) 821-7700
Facsimile:  (919) 821-7703
jangell@howardstallings.com

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO: |
| | ) | |
| WASHBURN LAW, PLLC | ) | 23-00222-5-DMW |
| | ) | |
| DEBTOR | ) | CHAPTER 7 |
| | ) | |
| James B. Angell, Chapter 7 Trustee for Washburn Law, PLLC, | ) ) ) | |
| Plaintiff | ) ) | Adv. Pro. No. 23-00082-5-DMW |
| vs. | ) ) | |
| Jackson Munsey, Jr. (deceased) and Garland Lee Zuber, Jr. | ) ) ) | |
| Defendants | ) | |

CERTIFICATE OF SERVICE

The undersigned, of the Howard Stallings Law Firm, certifies:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age:

That on this day, the foregoing STATEMENT OF MATERIAL FACTS SUPPORTING MOTION FOR SUMMARY JUDGMENT AGAINST GARLAND LEE ZUBER, JR. was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the parties listed below. I further certify that I have mailed the document to the non CM/ECF participants as set out below by first class mail.

I certify under penalty of perjury that the foregoing is true and correct.

DATE: January 30, 2025

                                      s/James B. Angell
                                      James B. Angell
                                      P.O. Box 12347
                                      Raleigh, NC 27605

| | |
|---|---|
| Brian C. Behr, Esquire<br>Bankruptcy Administrator<br>*Served via cm/ecf and by email to*<br>*Lesley_Dean@nceba.uscourts.gov* | Garland Lee Zuber, Jr.<br>205 North Alabama St.<br>Chesney, SC 29323 |